Stanley O. King, Esquire
Sharon A. King, Esquire
KING & KING, LLC
231 S. Broad Street
Woodbury, NJ 08096
856-845-3001
856-845-3079 (fax)
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANAE HIGGENBOTHAM, individually and in her capacity as Administratrix *ad Prosequendum* of the ESTATE of KEVIN HIGGENBOTHAM, Deceased, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. |
| : | |
| THE CITY OF TRENTON, TRENTON POLICE CHIEF ERNEST PARREY, JR., OFFICER CARLO CAVALLI, OFFICER SAMUEL GONZALEZ (#479/5707), OFFICER E. RAMOS (#5745), SERGEANT JASON KMIEC (# 4538), CAPITAL HEALTH SYSTEMS, INC., CAPITAL HEALTH REGIONAL MEDICAL CENTER, MICHELLE MICALIZZI, R.N. and JOHN DOES 1 through 10, individually and/or in their official capacities, jointly, severally, and/or in the alternative, : | **COMPLAINT and DEMAND FOR JURY** |
| : | |
| Defendants. : | |

Plaintiff, by and through her attorneys, brings this Complaint against Defendants and in support thereof alleges as follows:

## PARTIES

1.      Plaintiff, Shanae Higgenbotham, is the daughter and surviving heir-at-law of Kevin Higgenbotham, deceased. Letters of Administration upon the Estate of Kevin Higgenbotham were granted to Ms. Higgenbotham on January 4, 2017 by the Mercer County Surrogate Office.  Ms. Higgenbotham was also appointed Administratrix *ad Prosequendum* of Kevin Higgenbotham's Estate on March 24, 2016.   Ms. Higgenbotham brings this action individually and in her capacity as Administratrix *ad Prosequendum* of the Estate of Kevin Higgenbotham.  Ms. Higgenbotham resides in Willingboro Township, County of Burlington, State of New Jersey.

2.      Defendant City of Trenton is a municipal corporation organized and existing under the laws of the State of New Jersey.  Its offices are located at 319 East State Street, Trenton, Mercer County, New Jersey 08608.

3.      Defendant Ernest Parrey, Jr., at relevant times, was the police chief of the City of Trenton.  At all times mentioned in this Complaint, Defendant Parrey was acting under color of law and color of his authority as the police chief of the City of Trenton.  He is sued in his individual and official capacities.  His office is located at 225 North Clinton Avenue, Trenton, New Jersey 08608.

4.      Defendant Carlo Cavalli, at all relevant times, was a police officer employed by the City of Trenton in its police department.  At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a police officer of the City of Trenton.  He is sued in his individual and official capacities.  His business address is 225 North Clinton Avenue, Trenton, New Jersey 08608.

5.      Defendant Samuel Gonzalez, at all relevant times, was a police officer employed by the City of Trenton in its police department.  At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a police officer of the City of Trenton.  He is sued in his individual and official capacities.  His business address is 225 North Clinton Avenue, Trenton, New Jersey 08608.

6.      Defendant E. Ramos, at all relevant times, was a police officer employed by the City of Trenton in its police department.  At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a police officer of the City of Trenton.  He is sued in his individual and official capacities.  His business address is 225 North Clinton Avenue, Trenton, New Jersey 08608.

7.      Defendant Jason Kmiec, at all relevant times, was a police sergeant employed by the City of Trenton in its police department.  At all times mentioned in this Complaint, he was acting under color of law and color of his authority as a police sergeant of the City of Trenton. He is sued in his individual and official capacities.  His business address is 225 North Clinton Avenue, Trenton, New Jersey 08608.

8.      Defendant Capital Health Systems, Inc. ("CHS") d/b/a Capital Health Regional Medical Center, is a private corporation.  At all relevant times, CHS owned, managed, possessed, maintained, operated and/or controlled Defendant Capital Health Regional Medical Center ("CRHMC), a private, non-profit hospital located at 750 Brunswick Avenue, Trenton, New Jersey 08638.  At all relevant times, Defendants CHS and CHRMC held out themselves and Defendant Michelle Micalizzi, R.N. as skillful and qualified to render medical care to patients such as Mr. Higgenbotham.  The claims asserted against CHS and CHRMC are for the negligence and professional negligence of its agents, servants and employees.

9.     Defendant Michelle Micalizzi, R.N. is a licensed registered nurse employed by CHS and CRHMC at all times mentioned in this Complaint. At all relevant times, Defendant Micalizzi was the actual, apparent or ostensible agents and/or employee of Defendants CHS and CHRMC, acting within the course and scope of such agency and/or employment.  Her business address is 750 Brunswick Avenue, Trenton, New Jersey 08638.

10.     At all relevant times, Defendant Micalizzi, possessed the actual and apparent authority to act on behalf of Defendants CHS and CHRMS.  The public in general, and Mr. Higgenbotham, in particular, relied upon this apparent authority.

11.     At all relevant times, Defendants CHS and CHRMC were acting by and through doctors, fellows, residents, nurse practitioners, nurses, technicians, clinicians, security staff and other professional and non-professional personnel, within the scope of their employment, master-servant, and/or agency relationships with these Defendants CHS and CHRMC.  These individuals include any fellows, nurses, nurse practitioners, clinicians, other medical personnel, and/or security personnel, whose names appear in the medical records and are not ascertainable at this time, but require discovery from the named defendants to determine their identities and/or to more specifically identify their conduct in relation to their failures to properly care for Mr. Higgenbotham.

12.     At all relevant times, the individually named physician, nurse and institutional health care provider defendants were engaged in the practice of medicine, pursuing their respective specialties and/or health care duties, and were obliged to use the professional skill, knowledge and care which they possessed, and to practice their professions in accordance with reasonably safe and accepted standards of medicine in general and in their specialties in particular, as well as institutional standards of medical care.

13.     At relevant times, Mr. Higgenbotham was under the medical care, treatment and attendance of Defendants CHS and CHRMC, directly or through their agents, servants and/or employees.

14.     Any negligent act or omission committed by defendants and/or any authorized agents, servants, and employees of defendants, imposes liability upon defendants under the law of agency of the State of New Jersey.  Defendants CHS and CHRMC are liable for the acts of its actual, apparent, and/or ostensible agents who rendered care and treatment to Mr. Higgenbotham.

15.     Plaintiff is unaware of the true names and capacities of those defendants sued as John Does 1 through 10 and therefore sue these defendants using their fictitious names. Plaintiff will amend this complaint to allege each 10 unknown other named defendants' true names and capacities when that information becomes known.  Plaintiff is informed and believes that each of these 10 unknown other named defendants is legally responsible and liable for the incident, injuries and damages set forth here, and that each of these defendants legally caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, wanton or despicable conduct as described below.  They include members of the security staff, who, along with Defendant Michelle Micalizzi, R.N, placed Mr. Higgenbotham in four-points restraints on the morning of June 15, 2015.  They also include agents of CHS and CHRMC whose names appear in medical and/or hospital records and are not ascertainable at this time.

## JURISDICTION

16.     Plaintiff invokes jurisdiction pursuant to 28 U.S.C. §1331 as the claims raise federal questions under 42 U.S.C. §1983.  Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. §1367 for claims arising under state law as these claims form part of the same case and controversy as the claims brought under 42 U.S.C. §1983.

17.     Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. §1391(b) as it is the judicial district in which the claims asserted herein arose.

**FIRST CAUSE OF ACTION**
**(Deprivation of Federally Protected Right as to all Defendants**
**except CHS, CHRMC, & Micalizzi)**
*Excessive Force*

18.     On the morning of June 15, 2015, Trenton police officers, Carlo Cavalli and Samuel Gonzales, were detailed to 213 Bellevue Avenue in Trenton, New Jersey for a call relating to a verbal dispute at that residence.

19.     The call was made by the decedent, Kevin Higgenbotham, who suffered from bipolar disorder and who was in the midst of a bipolar episode.

20.     In his call to the police, Mr. Higgenbotham stated that Dwayne Jackson, a family friend who had been staying with the family at the Bellevue residence, was trespassing on his family home.

21.     Once the officers arrived on the scene, Mr. Higgenbotham appeared agitated and began speaking loudly to the officers.   This interaction occurred in the front yard of the Higgenbotham residence.

22.     Jackson telephoned Adrienne Higgenbotham, Mr. Higgenbotham's mother, to advise her of what was happening at the residence.

23.     Adrienne Higgenbotham advised the officers that her son suffered from bipolar disorder and requested that he be taken to a crisis center.

24.     The officers declined the request stating that they needed Mr. Higgenbotham's consent in order to take him to the crisis center.

25.     Mr. Higgenbotham continued to raise his voice at the officers, prompting them to pepper spray him.

26.     Mr. Higgenbotham then fled from the officers, running into the family home.

27.     The officers pursued Mr. Higgenbotham, but were unable to find him.

28.     He had fled onto a first floor roof, which he accessed from a second floor bedroom window.

29.     Mr. Higgenbotham then used a fire escape ladder to descend into an alley in the back of the row homes.

30.     The officers eventually found Mr. Higgenbotham in the back alley, handcuffed him and placed him in custody.

31.     Mr. Higgenbotham identified himself to the officers by name and social security number.  He was calm and was neither fighting nor struggling.  He advised the officers that he could not see.

32.     He was placed in a paddy wagon with his hands cuffed behind his back.  He again advised the officers that he could not see.   The officers made no efforts to ease Mr. Higgenbotham's eye irritation, but rather shut the door to the police vehicle and left him to struggle with the effects of the pepper spray in the small, enclosed space.

33.     Apparently irritated by the effects of the pepper spray, Mr. Higgenbotham began kicking while in the paddy wagon.  In response, the officers opened the back door, and again pepper sprayed the already restrained Higgenbotham.  They then closed the door to the police vehicle, again leaving Mr. Higgenbotham to struggle with the pepper spray in the small, enclosed area.

34.     Still irritated by the pepper spray, Mr. Higgenbotham continued to kick while waiting in the police vehicle.

35.     In response, the officers opened the door to the vehicle for a second time, again pepper sprayed the already restrained Higgenbotham, closed the door to the vehicle, and once again left Mr. Higgenbotham in the enclosed vehicle.

36.     During their encounter with Mr. Higgenbotham, Officers Cavalli and Gonzalez were joined by Officer E. Ramos (Badge #5745) and Sergeant Jason Kmiec (Badge # 4538). During the encounter with these officers, Mr. Higgenbotham was not merely pepper sprayed on at least three occasions, but he was also beaten with a baton, without justification.

37.     The officers eventually got into the police vehicle and drove Mr. Higgenbotham to the Emergency Department at CHRMC in Trenton.

38.     Upon arrival at the hospital, Mr. Higgenbotham was still handcuffed.  He ambulated on his own to the Emergency Department, with assistance from the police officers. He was noticeably diaphorectic upon arrival.

39.     Defendant officers advised emergency room staff that Mr. Higgenbotham was "maced" and that he was struck multiple times with a baton.  They also incorrectly advised the medical staff that Mr. Higgenbotham jumped from the second or third floor of the house.

40.     Defendant Micalizzi reported that Mr. Higgenbotham became combative, causing her and the security officers to initiate four-points, hard restraints on Mr. Higgenbotham.

41.     Shortly after being placed in these restraints, Mr. Higgenbotham became unresponsive and suffered cardiac arrest and respiratory failure.

42.     He was resuscitated over a period of time, but never regained complete consciousness.

43.     Neither Defendant Micalizzi not John Doe security officers were authorized to place Mr. Higgenbotham in four-points restraints, as CHRMC policy requires that the use of any restraints can be ordered only by a physician.

44.     Emergency Department physician, Karen Greenberg, D.O., stated that she did not order the restraints and that she was not even aware of the use of four-points restraints until she heard a call for "code blue."

45.     Following the cardiac arrest and respiratory failure, Mr. Higgenbotham was admitted to CHRMC.

46.     He was treated at CHRMC until approximately June 29, 2015,

47.     At the time of discharge, his condition was described as "ventilator-dependent respiratory failure, probably secondary to anoxic encephalopathy as a result of cardiac arrest. Statuspost tracheostomy."

48.     Following his discharge form CHRMC, Mr. Higgenbotham was admitted to Kindred Hospital in Philadelphia, for the purpose of being weaned off of the ventilator.

49.     Mr. Higgenbotham was discharged from Kindred Hospital on July 27, 2015. Following this discharge, he became a resident in a Philadelphia nursing home, where he remained until December 2015.  He was subsequently treated by Jefferson Hospital and again by Kindred Hospital.  He was eventually transferred to a Trenton area nursing home in February 2015.

50.     Mr. Higgenbotham died on March 12, 2016, while a resident in the Trenton area nursing home.

51.     Dr. Raafat Ahmad, Mercer County Medical Examiner, stated that Mr. Higgenbotham died from Anoxic Encephalopathy, sepsis, decubitus ulcer due to cardio-

respiratory arrest following hospitalization on 6/15/15 for cocaine related excited delirium. Dr. Michael Baden, forensic pathologist, agrees that Mr. Higgenbotham died from Anoxic Encephalopathy, but denies that Mr. Higgenbotham suffered any cocaine related excited delirium on June 15, 2015. Dr. Baden believes that Mr. Higgenbotham was improperly restrained while he was a patient at CHRMC, resulting in the deprivation of oxygen to his brain.

52. The conduct of Defendants Cavalli, Gonzalez, Ramos and Kmiec as described above violated clearly established law and constitute excessive use of force by these defendants, depriving Mr. Higgenbotham of his right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

53. Without any justification and/or provocation, Defendants Cavalli, Gonzalez, Ramos and Kmiec intentionally, willfully, maliciously and with deliberate indifference to his constitutionally protected rights, directly and proximately caused Mr. Higgenbotham to suffer economic losses, grievous bodily harm and emotional pain and suffering.

54. By reason of the aforesaid violation of Mr. Higgenbotham's rights, Plaintiff is entitled to damages under 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**(Deprivation of Federally Protected Right under § 1983)**
**False Arrest/False Imprisonment as to all Defendants except CHS, CHRMC & Micalizzi**

55. Plaintiff adopts and incorporates by reference, paragraphs 1 through 54 as if set forth herein at length.

56. Defendants, Cavalli, Gonzalez, Ramos and Kmiec, and Chief Parrey and the City of Trenton—through their agents and employees—violated clearly established law by falsely arresting and falsely imprisoning Mr. Higgenbotham in violation of his Fourth Amendment right to be secure in his person against unreasonable searches and seizures and not to be arrested

without probable cause, and his Fourteenth Amendment right not to be deprived of liberty without due process of law.

57.     As a direct and proximate result of the aforesaid acts of these defendants, Mr. Higgenbotham and the Plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

58.     By reason of the aforesaid violation of Mr. Higgenbotham's rights, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**
**(Deprivation of Federally Protected Right under § 1983)**
**Failure to Intervene as to all Defendants except CHS, CHRMC & Micalizzi**

59.     Plaintiff adopts and incorporates by reference paragraphs 1 through 58 as if set forth herein at length.

60.      Defendants Cavalli, Gonzalez, Ramos, Kmiec, Chief Parrey and the City of Trenton acted under color of law in engaging in the conduct described above.

61.     The conduct of these defendants as described above constitute the failure of the officers to intervene to prevent the excessive use of force by each other, depriving Mr. Higgenbotham of his clearly established right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983.

62.      The acts committed by the defendants as described above were a proximate cause of bodily injuries to Mr. Higgenbotham, in violation of his constitutional rights as previously set forth.

63.      By reason of the aforesaid violation of Mr. Higgenbotham's rights, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

**FOURTH CAUSE OF ACTION**
**(Deprivation of Federally Protected Rights under § 1983**
**as to Defendants Chief Parrey and the City of Trenton)**
*Monell* **Claim**

64.     Plaintiff adopts and incorporates by reference, paragraphs 1 through 63 as if set forth herein at length.

65.     Defendants Chief Parrey and the City of Trenton are liable for the deprivation of Mr. Higgenbotham's federally protected rights by Officers Cavalli, Gonzalez, Ramos and Kmiec, as described in the foregoing Causes of Action.

66.     At all relevant times, the City of Trenton and its police chief, Ernest Parrey, were responsible for the training of police officers in the City of Trenton in the proper and lawful use of force and in the execution of lawful arrests.

67.     Defendants, Chief Parrey and the City of Trenton, have repeatedly and knowingly failed to enforce the laws of the United States, the State of New Jersey and the regulations of the City of Trenton pertaining to the use of force and lawful arrests, thereby creating within the City of Trenton, an atmosphere of lawlessness in which police officers employ excessive and illegal force and violence, and engage in illegal arrests, and such acts are condoned and justified by their superiors.

68.     At the time of the incident described above, Chief Parrey and the City of Trenton had developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Trenton, which caused Mr. Higgenbotham's rights to be violated.

69.     It was the policy and/or custom of the City of Trenton and its police chief to inadequately and improperly supervise and train its police officers and to inadequately and improperly investigate citizen complaints of police misconduct.   Civilian complaints were

routinely dismissed and officers' misconduct were instead tolerated and condoned by the City of Trenton and its police chief.  For example, for five calendar years preceding this event—2010 through 2014—the Trenton Police Department had 219 civilian complaints of excessive force filed against members of the Trenton Police Department.  Of these complaints, 144 were investigated.  Of the 144 investigated complaints, two (or one percent) were sustained.  The other complaints were "administratively closed" or resulted in findings of exonerated, not sustained, or unfounded.  The Trenton Police Department also failed to account for the remaining 75 complaints that were not investigated or "administratively closed."

70.     Similarly, for the same period of time—2010 through 2014—the Trenton Police Department had 59 civilian complaints of improper arrest.  Out of 41 complaints investigated, not a single complaint was sustained.  Rather, 100 percent of the complaints investigated were "administratively closed" or resulted in the officer being exonerated or a finding that the complaint was not sustained or unfounded.  The Trenton Police Department also failed to account for the remaining 18 complaints that were not investigated or "administratively closed."

71.     Officers engaging in misconduct were therefore not disciplined nor provided with appropriate in-service training or retraining.  Further constitutional violations on the part of its police officers were therefore not discouraged, but condoned.  As a result, police officers in the City of Trenton believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.  As a further result of the policies and practices, citizens were routinely subjected to police misconduct, including false arrests and excessive use of force.

72.     The above-described policies and customs demonstrate a deliberate indifference on the part of policymakers of the City of Trenton to the constitutional rights of Mr. Higgenbotham alleged herein.

73.     Chief Parrey's and the City of Trenton's failure to provide training and supervision regarding lawful arrests and the proper use of force to police officers constitute negligence, gross negligence and deliberate indifference to the safety and lives of their citizens. The said negligence, gross negligence and deliberate indifference were the proximate cause of Mr. Higgenbotham's injuries.

74.     By reason of the aforesaid violation of Mr. Higgenbotham's rights, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

**FIFTH CAUSE OF ACTION**
**(Pendent Claim of Violation of New Jersey Civil Rights Act**
**as to all Defendants except CHS, CHRMC and Micalizzi )**

75.     Plaintiff adopts and incorporates by reference, paragraphs 1 through 74 as if set forth at length herein.

76.     This cause of action arises under New Jersey Civil Rights Act, N.J.S.A. §10:6-1, *et seq.*  Supplemental jurisdiction is established pursuant to 28 U.S.C. §1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

77.     The acts committed by Defendants Cavalli, Gonzalez, Ramos and Kmiec constitute a violation of rights secured by the United States Constitution, as alleged above, and a further violation of the New Jersey Constitution, as follows:

14

Article I, Section 7 of the New Jersey Constitution prohibiting arrest without probable cause and guaranteeing Mr. Higgenbotham the right to be secure in his person against unreasonable searches and seizures; and

Article I, Section 7 of the New Jersey Constitution guaranteeing Mr. Higgenbotham the right to be secure in his person against unreasonable searches and seizures, including the excessive use of force.

78.     As a direct and proximate result of the aforesaid acts of the defendants, Mr. Higgenbotham and the plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

79.     By reason of the aforesaid violation of Mr. Higgenbotham's rights, Plaintiff is entitled to damages under *N.J.S.A.* §10:6-1, *et seq.,* including costs, attorney fees and expenses pursuant to *N.J.S.A.* §10:6-2(f).

<u>**SIXTH CAUSE OF ACTION**</u>
**(Pendent Claim of Assault & Battery as to all Defendants)**

80.     Plaintiff adopts and incorporates by reference paragraphs 1 through 79 as if set forth herein at length.

81.     Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

82.     The conduct of Defendants, Cavalli, Gonzalez, Ramos, Kmiec, Chief Parrey, the City of Trenton, CHS, CHRMC and Micalizzi as described above, resulted in an unprovoked, unpermitted, harmful and offensive contact with Mr. Higgenbotham and thus constitutes assault and battery.

83.    As a direct and proximate result of Defendants' assault and battery, Mr. Higgenbotham and the plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

**SEVENTH CAUSE OF ACTION**
**(Pendent Claim of False Arrest/False Imprisonment as to all Defendants)**

84.    Plaintiff adopts and incorporates by reference paragraphs 1 through 83 as if set forth herein at length.

85.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

86.    The conduct of the Defendants Cavalli, Gonzalez, Ramos, Kmiec, Chief Parrey, the City of Trenton, CHS, CHRMC and Micalizzi as described above, resulted in the false arrest and false imprisonment of Mr. Higgenbotham, directly and proximately causing Mr. Higgenbotham and the plaintiff physical, economic and emotional damages.

**EIGHTH CAUSE OF ACTION**
**(Pendent Claim of Negligence as to all Defendants**
**except CHS, CHRMC and Micalizzi)**

87.    Plaintiff adopts and incorporates by reference paragraphs 1 through 86 as if set forth herein at length.

88.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

89.    Defendants, Cavalli, Gonzalez, Ramos, Kmiec, Chief Parrey and the City of Trenton, acted with a lack of cautious regard for Mr. Higgenbotham's right to be free from

unnecessary bodily harm or from the threat of such harm and without the due care that prudent police officers would use under the circumstances.

90.    As a direct and proximate result of Defendants' conduct, Mr. Higgenbotham and the plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

**NINTH CAUSE OF ACTION**
**(Pendent Claim of Negligence/Professional Negligence as to Defendant Micalizzi)**

91.    Plaintiff adopts and incorporates by reference paragraphs 1 through 90 as if set forth herein at length.

92.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

93.    At all relevant time, Defendant Michelle Micalizzi, R.N. disregarded her duty to provide Mr. Higgenbotham with proper nursing care.

94.    During Mr. Higgenbotham's visit to the CHRMC's Emergency Department, the nursing/professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, and conduct evidencing Defendant Micalizzi's reckless indifference to the rights of Mr. Higgenbotham consisting of, among other things:

a.    Improperly restraining and causing Mr. Higgenbotham to be restrained by a nurse and security personnel not authorized to place Mr. Higgenbotham in restraints;

b.    Failing to insure and maintain communication between doctors and nurses caring for and/or responsible for the care of Mr. Higgenbotham;

c.    Failing to monitor and/or properly monitor Mr. Higgenbotham after placing him in four-points restraints;

d.    Failing to possess and exercise the degree of nursing knowledge, care and skill ordinarily exercised in similar cases by nurses;

e.      Failing to conform to the applicable standards of nursing and medical care under the circumstances;

f.      Failing to exercise reasonable care in collecting and reporting information to assist the physicians in the care and treatment of Mr. Higgenbotham;

g.      Practicing outside her areas of authority or limits of nursing competence;

h.      Failing to follow the chain of command and utilize the chain of command protocol;

i.      Failing to render appropriate nursing care to Mr. Higgenbotham;

j.      Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

k.      Failing to provide nursing care in accordance with the standards of acceptable nursing care, prudence and practice;

l.      Failing to completely, accurately and timely document all pertinent information on the patient's medical record;

m.      Failing to take precautions to minimize the risk of injuries to Mr. Higgenbotham;

n.      Failing to respect and maintain the basic rights of the patient, Mr. Higgenbotham;

o.      Failing to incorporate any hospital and/or nursing standard into her nursing care of Mr. Higgenbotham; and

p.      Failing to appropriately consult with other medical personnel and/or providers in the care of Mr. Higgenbotham.

## TENTH CAUSE OF ACTION
**(Pendent Claim of Negligence/ Professional Negligence as to John Doe Defendants)**

95.      Plaintiff adopts and incorporates by reference paragraphs 1 through 94 as if set forth herein at length.

96.      Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

97.     During Mr. Higgenbotham's visit to the CHRMC's Emergency Department, John Doe medical and security personnel engaged in professional malpractice, negligence, carelessness, recklessness, willful and wanton conduct, and conduct evidencing these defendants' reckless indifference to the rights of Mr. Higgenbotham consisting of, among other things:

a.      Improperly restraining and causing Mr. Higgenbotham to be restrained by a nurse and security personnel not authorized to place Mr. Higgenbotham in restraints;

b.      Failing to insure and maintain communication between doctors and nurses caring for and/or responsible for/caring for Mr. Higgenbotham;

c.      Failing to monitor and/or properly monitor Mr. Higgenbotham after placing him in four-points restraints.

d.      Failing to possess and exercise the degree of nursing knowledge, care and skill ordinarily exercised in similar cases by nurses

e.      Failing to conform to the applicable standards of nursing and medical care under the circumstances;

f.      Failing to exercise reasonable care in collecting and reporting information to assist the physicians in the care and treatment of Mr. Higgenbotham;

g.      Practicing outside her areas of authority or limits of nursing competence;

h.      Failing to follow the chain of command and utilize the chain of command protocol;

ii.     Failing to render appropriate nursing care to Mr. Higgenbotham;

j.      Failing to follow hospital protocols, rules, regulations, procedures, policies and requirements;

k.      Failing to provide nursing care in accordance with the standards of acceptable nursing care, prudence and practice;

l.      Failing to completely, accurately and timely document all pertinent information on the patient's medical record;

m.   Failing to take precautions to minimize the risk of injuries to Mr. Higgenbotham;

n.   Failing to respect and maintain the basic rights of the patient, Mr. Higgenbotham;

o.   Failing to incorporate any hospital and/or nursing standard into her nursing care of Mr. Higgenbotham; and

p.   Failing to appropriately consult with other medical personnel and/or providers in the care of Mr. Higgenbotham.

98.   As a direct result of the professional negligence and carelessness, recklessness, willful and wanton conduct, and carelessness of Defendants John Does, as set forth in this Complaint, Mr. Higgenbotham suffered severe catastrophic injuries and ultimately died.

## ELEVENTH CAUSE OF ACTION
### (Pendent Claim of Negligence/Professional Negligence as to Defendants CHS & CHRMC)

99.   Plaintiff adopts and incorporates by reference paragraphs 1 through 98 as if set forth herein at length.

100.   Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

101.   At all relevant times, Defendant Michelle Micalizzi, R.N. and the John Doe defendants—some of whom are unidentified security officers—were employees, agents and/or ostensible agents of Defendants, CHS and CHRMC, which are vicariously liable for the aforesaid malpractice and other negligent, reckless, intentional, willful, and/or wanton acts and/or failures to act of Defendant Micalizzi and the John Doe defendants, who at all relevant times were acting within the scope of their employment, agency, and/or ostensible agency and in furtherance of the business and affairs of Defendants CHS and CHRMC.

102.    Defendant Micalizzi, the unidentified security officers and other John Doe defendants were negligent and deviated from the standard of care in their treatment and care of Mr. Higgenbotham.

103.    As a direct and proximate result of the aforesaid malpractice and other negligent, reckless, intentional, willful, and/or wanton acts and/or failures to act of these defendants—and therefore CHS and CHRMC—Mr. Higgenbotham suffered catastrophic injuries and ultimately died.

**TWELFTH CAUSE OF ACTION**
**(Pendent Claim of Corporate Negligence as to Defendants CHS and CHRMC)**

104.    Plaintiff adopts and incorporates by reference paragraphs 1 through 103 as if set forth herein at length.

105.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

106.    In addition to the derivative and vicarious liability of CHS and CHRMC, as previously set forth in this Complaint, CHS and CHRMC further owed the direct and non-delegable duties to Mr. Higgenbotham under the doctrinal tenets set forth in *Dunn v. Praiss*, 139 N.J. 564, 656 A.2d 413 (1995) and its progeny of case law.

107.    The corporate negligence of Defendants, CHS and CHRMC, arising out of the care and treatment rendered to Mr. Higgenbotham under the doctrinal tenets set forth in *Praiss*, 139 N.J. 564, 656 A.2d 413 (1995) and its progeny of case law, consisted of:

    a.    A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

    b.    A duty to select and retain competent physicians and nurses who possess requisite levels of knowledge, skill and dedication;

c.     A duty to oversee all personnel who practice medicine within the four walls of the hospital, including its agents, servants, and/or employees to ensure the care and treatment of patients;

d.     A duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients through appropriate and timely communication of a patient's condition between the physician staff and the nursing staff;

e.     A duty to have appropriate medical and nursing staffing to meet the needs of its patients, and in particular, Mr. Higgenbotham

f.     A duty to institute and/or enforce adequate chain of command policies and procedures;

g.     A duty to oversee the patient care by nurses;

h.     A duty to adequately supervise its staff and employees to insure that proper practices and procedures are followed;

i.     A duty to properly train physicians, physicians assistants, nurses and nursing assistants, security personnel and/or others in any chain of command;

j.     A duty to formulate, adopt and/or enforce appropriate rules, regulations, guidelines, procedures or protocols to provide for coordination of care; and

k.     A duty to formulate, adopt and/or enforce appropriate rules, regulations, guidelines, procedures or protocols relating to the treatment and care of patients.

108.    Defendants breached these aforementioned duties owed to Mr. Higgenbotham.

109.    As a direct result of the negligence and carelessness of defendants as set forth above and as set forth in this Complaint, Mr. Higgenbotham suffered catastrophic injuries and ultimately died.

## THIRTEENTH CAUSE OF ACTION
### (Pendent Claim of Gross Negligence as to all Defendants)

110.    Plaintiff adopts and incorporates by reference paragraphs 1 through 109 as if set forth herein at length.

111.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

112.    The conduct of all defendants as described above unnecessarily subjected Mr. Higgenbotham to danger, and was carried out with willful, malicious, wanton and reckless disregard of the consequences, and with conscious indifference to the danger of harm and injury to Mr. Higgenbotham, and with intent to inflict harm and injury on Mr. Higgenbotham.

113.    The consequential injury to and ultimate death of Mr. Higgenbotham were a direct and proximate result of the gross negligence of Defendants, Cavalli, Gonzalez, Ramos, Kmiec, Chief Parrey, the City of Trenton, CHS, CHRMC, and Micalizzi.

114.    As a result of the defendants' negligence, Mr. Higgenbotham and the plaintiff suffered economic losses, grievous bodily harm and emotional pain and suffering.

## FOURTEENTH CAUSE OF ACTION
### (Pendent Claim of Wrongful Death as to all Defendants)

115.    Plaintiff adopts and incorporates by reference paragraphs 1 through 114 as if set forth herein at length.

116.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

117.    By reason of the death of Mr. Higgenbotham, Plaintiff has been deprived of decedent's support, comfort, society and services, all to their damages.

118.    As a result of the actions of all defendants, Plaintiff is entitled to recover pecuniary damages pursuant to *N.J.S.A.* 2A:31-1, *et seq.*

## FIFTEENTH CAUSE OF ACTION
### (Pendent Claim of Survivorship as to all Defendants)

119.    Plaintiff adopts and incorporates by reference paragraphs 1 through 118 as if set forth herein at length.

120.    Supplemental jurisdiction for this Cause of Action is established pursuant to 28 U.S.C. § 1367 as the claim forms part of the same case and controversy as the claims brought under the First through Fourth Causes of Action.

121.    As a direct and proximate result of the wrongful act of all defendants as described above, Mr. Higgenbotham suffered severe physical and mental pain.

122.    As a proximate result of the wrongful acts of the defendants, Mr. Higgenbotham died.

123.    By reason of the injury and death of the decedent, the decedent's estate has become liable for hospital bills, doctor bills and funeral expenses of Kevin Higgenbotham, deceased.

124.    As a result of the actions of all defendants, Plaintiff is entitled to recover damages pursuant to *N.J.S.A.* 2A:15-3, *et seq.*

WHEREFORE, Plaintiffs demand judgment against the defendants on all causes of action as follows:

(1)    Compensatory damages in the amount of $10,000,000;

(2)    Punitive damages;

(3)    Attorney's fees and costs of this action; and

(4)    Such other and further relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury of this action.

## TRIAL ATTORNEY DESIGNATION

Stanley O. King is hereby designated as trial attorney.

Dated: June 14, 2017                                KING & KING, LLC
                                                    Attorneys for Plaintiffs

                                                    By   /s/ Stanley O. King
                                                       STANLEY O. KING

                                                    By   /s/ Sharon A. King
                                                       SHARON A. KING