UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(609) 989-2182

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## LETTER ORDER

May 10, 2021

J Brooks DiDonato, Esq.
Parker McCay, P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054

Stanley O. King, Esq.
King & King, LLC
231 S. Broad Street
Woodbury, New Jersey 08096

   RE:   ***Higgenbotham v. City of Trenton, et al.***
          **Civ. No. 17-04344 (FLW)**

Counsel:

  Defendants, City of Trenton (the "City"), Police Chief Ernest Parrey, Jr. ("Chief Parrey"), Officer Carlo Cavalli ("Cavalli"), Officer Samuel Gonzalez ("Gonzalez"), Officer E. Ramos ("Ramos"), and Sergeant Jason Kmiec ("Kmiec") (collectively, the "Trenton Defendants"), move for reconsideration ("Motion for Reconsideration") of the Court's Opinion and Order dated February 11, 2021, granting in part, and denying in part, the Trenton Defendants' Motion for Summary Judgment. Plaintiff Shanae Higgenbotham ("Plaintiff"), in her capacity as administratrix of the Estate of Kevin Higgenbotham, brought this civil rights action under 42 U.S.C. § 1983 against the Trenton Defendants in connection with the arrest and subsequent death of her father, Kevin Higgenbotham ("Higgenbotham").

For the reasons set forth below, the Trenton Defendants' Motion for Reconsideration is **GRANTED** in part, and **DENIED** in part. Specifically, Plaintiff's common law claim for false arrest/false imprisonment (Count VII) is dismissed with prejudice because the police officers had probable cause to arrest Higgenbotham. Further, Plaintiff's claims for assault and battery (Count VI), negligence (Count VIII), and gross negligence (Count XIII) are dismissed with prejudice, consistent with the Court's prior dismissal of Plaintiff's § 1983 excessive force and NJCRA claims. For purposes of clarity, those common law claims in Counts VI, VIII, and XIII are dismissed as to all Trenton Defendants for the alleged force used before Higgenbotham was arrested and placed in handcuffs; however, those claims against Officer Gonzalez survive based on his conduct after Higgenbotham was handcuffed. Also, to the extent that Plaintiff's claims for negligence and gross negligence are based on Officer Cavalli's, Officer Ramos', and Sergeant Kmiec's failure to intervene, those claims also survive, consistent with the Court's February 11th Opinion. Finally, the Trenton Defendants' Motion for Reconsideration is denied as to Plaintiff's claims for wrongful death (Count XIV) and survivorship (Count XV).

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Because the factual background of this matter is set forth in the Court's February 11th Opinion, I will only recount the necessary facts for the resolution of this motion.

This case arises from the arrest and eventual death of Higgenbotham, following an incident of domestic violence at his mother's home in Trenton, New Jersey, on June 15, 2015. Trenton police officers Cavalli and Gonzalez responded to the scene of the "verbal dispute," where they spoke with Higgenbotham and an alleged trespasser, Higgenbotham's brother, Dwayne Jackson ("Jackson"). After speaking with the parties, Officer Cavalli informed Higgenbotham, who was believed to have been suffering from a bipolar episode or mental crisis at the time, that he was

under arrest for a simple assault allegedly committed against Jackson. Higgenbotham ignored Officer Cavalli's instructions to place his hands behind his back, and resisted arrest. Thereafter, Higgenbotham led the Officers on a foot chase through various rooms and areas of his mother's Trenton home. During the pursuit, it is undisputed that the Officers exercised force, in the form of pepper sprays and baton strikes, in their attempt to subdue and arrest Higgenbotham. Specifically, the record demonstrates that Officer Cavalli pepper sprayed Higgenbotham at least once outside of the home on the front porch, Officer Gonzalez pepper sprayed Higgenbotham once in the bathroom, and Officer Cavalli struck Higgenbotham multiple times with his collapsible baton both outside of the home and in the bathroom.

Following the lengthy chase, the Officers were able to handcuff Higgenbotham. After Officer Cavalli placed the restrained Higgenbotham in the rear compartment of the police car, Higgenbotham began kicking the inside of the vehicle, allegedly damaging the door. As a result, Officer Gonzalez deployed his pepper spray once again, though the number of sprays administered is disputed. A short time thereafter, Officer Cavalli transported Higgenbotham to Capital Health Regional Medical Center ("Capital Health") for a crisis evaluation. At Capital Health, Higgenbotham was placed in restraints. A short time later, he unexpectedly went into cardiac/respiratory arrest, and although physicians in the emergency room revived Higgenbotham, he never regained consciousness. On March 12, 2016, Higgenbotham died from sepsis while at the Atrium Post-Acute Care facility in Lawrence, New Jersey.

As set forth in the February 11th Opinion, Plaintiff filed the instant Complaint on June 14, 2017, asserting fifteen claims, including the following against the Trenton Defendants:

- Count I, for excessive force under § 1983, against the Trenton Defendants;

- Count II, for false arrest and/or false imprisonment under the Fourth Amendment, pursuant to § 1983, against the Trenton Defendants;

- Count III, for failure to intervene under § 1983, against the Trenton Defendants;

- Count IV, *Monell* claims for unlawful custom or policy and failure to train, against Defendants Chief Parrey and the City of Trenton;

- Count V, for violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, *et seq.* ("NJCRA"), against the Trenton Defendants;

- Count VI, for common law assault and battery, against all Defendants;

- Count VII, for false arrest and/or false imprisonment, against all Defendants;

- Count VIII, for common law negligence, against the Trenton Defendants;

- Count XIII, for gross negligence, against all Defendants;

- Count XIV, for wrongful death, against all Defendants; and

- Count XV, for survivorship, against all Defendants.

On August 23, 2019, the Trenton Defendants moved for summary judgment. (ECF No. 42.) After reviewing the parties' submissions, I issued an Opinion and Order on February 11, 2021, granting in part, and denying in part the Trenton Defendants' motion. (ECF Nos. 75 and 76, February 11th Opinion and Order.) Specifically, the Court granted summary judgment in favor of the Trenton Defendants on Plaintiff's false arrest and/or false imprisonment claim under § 1983 (Count II) and any analogous claims asserted under the NJCRA, as well as to Plaintiff's claims of excessive force under § 1983 (Count I) and analogous claims under the NJCRA in connection with the alleged force used before Higgenbotham was arrested and placed in handcuffs. (*Id.*) The Court denied summary judgment, however, on Plaintiff's excessive force claims under § 1983 and the NJCRA, as they relate to the alleged force applied by Officer Gonzalez after Higgenbotham was handcuffed. (*Id.*) Moroever, the Court dismissed Plaintiff's state and federal excessive force claims under both statutes against all other Trenton Defendants. (*Id.*) In addition, with respect to Plaintiff's failure to intervene claim under § 1983 (Count III), including analogous NJCRA claims,

4

the Court granted summary judgment in favor of Officer Gonzalez, Chief Parrey, and the City of Trenton, but denied summary judgment as to Officer Cavalli, Officer Ramos, and Sergeant Kmiec. Finally, the Court denied summary judgment as to all remaining state law claims against the Trenton Defendants, because despite moving for dismissal of all claims, the Trenton Defendants did not address Plaintiff's state law claims in their briefing. (*Id.*)

On March 11, 2021, the Trenton Defendants filed the instant Motion for Reconsideration. (ECF No. 79.) They seek reconsideration of the Court's denial of summary judgment as to the remaining state law claims asserted against them, as well as the Court's denial of summary judgment as to Plaintiff's claims for wrongful death and survivorship. (Trenton Def. Moving Br., 2-3.) To be clear, the Trenton Defendants do not move for reconsideration related to the Court's denial of summary judgment with respect to the Officer Gonzalez's alleged excessive use of force after Higgenbotham was handcuffed and placed in the rear of the patrol car, nor with respect to Plaintiff's claim for failure to intervene under § 1983 against Officer Cavalli, Officer Ramos, and Sergeant Kmiec. (*Id.*) Additionally, in the event the Court denies the Trenton Defendants' Motion for Reconsideration as to Plaintiff's remaining state law claims, the Trenton Defendants request that the Court enlarge the period during which dispositive motions may be filed so that summary judgment as to those claims may be sought. (*Id.*)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration. In particular, pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). Motions for reconsideration are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate*

*Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A "judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [motion to dismiss]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415 (quotations omitted). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citation omitted). In other words, "a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted). Rather, a difference of opinion with the court's decision should be dealt with through the appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998).

### III.   DISCUSSION

    A.   <u>Common Law Claims for False Arrest/False Imprisonment, Assault and Battery, Negligence, and Gross Negligence</u>

The Trenton Defendants argue that the Court should dismiss Plaintiff's state court common law claims for assault and battery (Count VI), false arrest/imprisonment (Count VII), negligence (Count VIII), and gross negligence (Count XIII). The Trenton Defendants claim that their motion

for summary judgment both expressly and implicitly moved to dismiss these four claims. (Trenton Def. Moving Br., 5-7.)

At the outset, the Court acknowledged in its February 11th Opinion that the Trenton Defendants' notice of motion and moving brief filed in support of its application for summary judgment sought dismissal of *all* counts. (February 11th Opinion at 11.) However, the Court denied that portion of the Trenton Defendants' motion for summary judgment because at no point in their briefing, did they specifically discuss the common law claims, nor did they cite any case law supporting dismissal. (*Id.*) The Trenton Defendants are well advised that when seeking dismissal of certain claims, they must accompany such a request with the proper legal and factual bases. While these defendants have failed to do so, the Court, nevertheless, recognizes that dismissal of these common law claims is appropriate, given the findings of the February 11th Opinion.[1]

First, the Court dismisses Plaintiff's common law false arrest/imprisonment claim in Count VI for the same reason that the Court dismissed Plaintiff's false arrest/imprisonment claim under § 1983 in Count II. Namely, because the police officers had probable cause to arrest Higgenbotham for simple assault, Plaintiff cannot establish that the Trenton Defendants falsely arrested him. *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (proving false arrest requires a showing of an absence of probable cause); *see also Wildoner v. Borough of Ramsey*, 162 N.J. 375, 396 (2000) (reinstating the order of the trial court dismissing the complaint, including a claim of common law false arrest/false imprisonment based on a finding of probable

---

[1] The Court notes that Plaintiff does not substantively oppose dismissal of Counts VI, VII, VIII, and XIII, but rather, she merely argues that the Trenton Defendants' Motion for Reconsideration should be denied because they failed to expressly request dismissal of these claims and did not provide any legal arguments supporting the same. (*See* Pl. Opp. to Motion for Reconsideration, at 3-8.)

7

cause). As discussed in the February 11th Opinion, evidence exists in the record that Officers Cavalli and Gonzalez observed physical injuries to Jackson's chest, which included several scratches a couple inches in length, and Jackson testified that he told Officers Cavalli and Gonzalez that his ribs hurt because Higgenbotham placed him in a "bear-hug." (February 11th Opinion at 13.) Neither Jackson, nor Plaintiff, contested that those injuries actually existed, and, in fact, Officer Gonzalez testified that while the Officers were speaking with Jackson in the yard, Higgenbotham threatened to "put [his] hands on" Jackson again, if Jackson tried to re-enter the house. (*Id.*) (citing Gonzalez Dep. Tr. at 37:4 to 12.) Accordingly, for the same reason that Plaintiff cannot maintain a cause of action for false arrest/imprisonment against the Trenton Defendants under § 1983, she cannot maintain a cause of action for false arrest/imprisonment under the common law. Count VII is dismissed against the Trenton Defendants with prejudice.

As for Plaintiff's remaining state law claims for assault and battery, negligence, and gross negligence, partial dismissal is also warranted since a portion of these three claims are predicated on the Trenton Defendants' purported use of excessive force during Higgenbotham's arrest. (See Compl., at ¶¶ 80-94, 110-14.)[2]

In the February 11th Opinion, I considered the Trenton Defendants' use of force in two distinct categories: (1) force exercised prior to Higgenbotham being handcuffed and (2) force exercised after Higgenbotham was handcuffed. (February 11th Opinion at 17.) After weighing the factors set forth in *Graham v. Connor*, 490 U.S. 386, 395–97 (1989), I found, based on uncontroverted evidence, that Officers Cavalli and Gonzalez's use of force prior to handcuffing Higgenbotham was not "objectively unreasonable" under the circumstances, and therefore, they

---

[2] Plaintiff does not argue that these claims are asserted in response to any other conduct by the Trenton Defendants.

were entitled to qualified immunity for that conduct. (*Id.* at 22-24.) As for the force exercised after Higgenbotham was arrested, however, I found that the reasonableness of Officer Gonzalez's conduct -- the decision to pepper spray Higgenbotham while Higgenbotham was restrained in the rear compartment of the police car and potentially exhibiting physical manifestations of adverse effects from prior applications of pepper spray -- required determination by a factfinder. (*Id.* at 24-34.) Because the evidence demonstrated that none of the other Trenton Defendants exercised excessive force during Higgenbotham's arrest, I dismissed Counts I and V against all the Trenton Defendants, except Officer Gonzalez. Thus, Plaintiff's claims for assault and battery, negligence, and gross negligence are dismissed with prejudice, consistent with the February 11th Opinion's dismissal of Plaintiff's excessive force and NJCRA claims, respectively. To be clear, these common law claims are dismissed as to all Trenton Defendants for the alleged force used before Higgenbotham was arrested and placed in handcuffs; however, these claims survive as against Officer Gonzalez based on his conduct after Higgenbotham was handcuffed. Also, to the extent that Plaintiff's claims for negligence and gross negligence are based on Officer Cavalli's, Officer Ramos', and Sergeant Kmiec's failure to intervene, those claims also survive. (February 11th Opinion, at 36-37) (finding that by failing to attempt to prevent Officer Gonzalez from pepper spraying a handcuffed Higgenbotham, Officer Cavalli, Officer Ramos, and Sergeant Kmiec could be found by a reasonable jury to have approved Officer Gonzalez's potentially unconstitutional conduct.)

      B.      <u>Wrongful Death and Survivorship Claims</u>

Finally, the Trenton Defendants argue that Plaintiff's claims for wrongful death (Count XIV) and survivorship (Count XV) should be dismissed, because Plaintiff's medical expert, Dr. Michael Baden, does not identify "specific pepper sprays or baton strikes" as the proximate causes

9

of Higgenbotham's death. (Trenton Def. Moving Br., at 10.) Rather, according to the Trenton Defendants, because the Court has found that the baton strikes were not excessive uses of force, that the "majority of the applications of pepper spray were not excessive," and it has not "even been presented facts with respect to [P]laintiff's restraint at Capital Health," Dr. Baden's opinion no longer supports claims for wrongful death and survivorship. (*Id.*)

Because this argument was not advanced in the Trenton Defendants' motion for summary judgment, however, it is inappropriate on this Motion for Reconsideration. *Leja v. Schmidt Mfg., Inc.*, No. 01-5042, 2008 WL 1995140, at * 3 (D.N.J. May 6, 2008) (finding that a motion for reconsideration should not be used to raise new issues with the benefit of "the hindsight provided by the court's analysis"); *see also Days Inns Worldwide, Inc. v. Ram Lodging, LLC, et al.*, No. 09-2275, 2010 WL 2985641, at *1 (D.N.J. July 19, 2010) (explaining that motions for reconsideration ordinarily address only those matters of fact or issues of law that were presented to, but were not considered by, the court in rendering its decision). The Trenton Defendants contend that this argument is appropriate for consideration on this Motion because they "had no way to anticipate that the Court would find some of the force to have been objectively reasonable, while it found at the same time that there was an issue of fact as to whether other portions of force applied by the officers was excessive or not." (Trenton Def. Moving Br., 11.) I disagree. However, the Trenton Defendants' argument relative to Plaintiff's wrongful death and survivorship claims is based not on the Court's decision in its February 11th Opinion, but rather it is based on Dr. Baden's expert report. The Trenton Defendants need not have relied upon the Court's analysis or its findings in the February 11th Opinion to advance the arguments made now, for the first time, on this Motion for Reconsideration.

Regardless, even if the Court were to consider the substance of Trenton Defendants' argument, it fails. Dr. Baden opined that Higgenbotham suffered from "anoxic encephalopathy because his brain was deprived of oxygen during respiratory and cardiac arrest while being restrained at the Capital Health Emergency Room; that his breathing had been impaired <u>by multiple, too close facial pepper sprays</u> discharges that obstructed air passages in his nose, mouth and lungs[.]" Dr. Baden further opined that the cause of Higgenbotham's death was "'anoxic encephalopathy caused by respiratory and cardiac arrest during 4-point restraint and <u>multiple facial pepper spray' discharges</u> that impaired his breathing…" As discussed above, *infra*, the February 11th Opinion found that Plaintiff may pursue her excessive force claims against Officer Gonzalez for his use of pepper spray after Higgenbotham was handcuffed. Specifically, the Court found that Higgenbotham had "the right to be free from having pepper spray repeatedly applied to him while he was restrained and exhibiting physical manifestations of adverse effects from prior applications of pepper spray." However, because material questions of fact surrounding Officer Gonzalez's conduct remain, the Court was unable to conclude that Officer Gonzalez was entitled to qualified immunity. Indeed, the February 11th Opinion found that the exact number of pepper sprays administered by Officer Gonzalez <u>is disputed</u>. A witness at the scene testified that Officer Gonzalez not only sprayed Higgenbotham once while handcuffed, as Officer Gonzalez claims, but that Officer Gonzalez pepper sprayed Higgenbotham at least once more inside the vehicle. Further, that same witness, as well as Jackson, testified that Higgenbotham could be heard repeatedly complaining about his difficulty breathing prior to Officer Gonzalez spraying him within the confined space of the police vehicle. On the other hand, the Officers testified that they did not hear Higgenbotham's complaints. Those same questions and disputes of fact preclude summary judgment as to Plaintiff's claims for wrongful death and survivorship, which require showing: (1)

that the decedent's death was caused by a wrongful act, and (2) that the decedent would have been able to maintain an action for damages had he survived. *Gunter v. Twp. of Lumberton*, No. 07-4839, 2012 WL 2522883, at *11 (D.N.J. June 29, 2012) *aff'd,* 535 Fed.Appx. 144 (3d Cir. 2013) (citing *Miller v. Estate of Sperling*, 166 N.J. 370, 741 (2001)).[3] Accordingly, the Court denies the Trenton Defendants' Motion for Reconsideration as to Counts XIV and Count XV.

## IV.    CONCLUSION

Accordingly, based on the foregoing reasons, the Trenton Defendants' Motion for Reconsideration is **GRANTED** in part, and **DENIED** in part.  Specifically, Plaintiff's common law claim for false arrest/false imprisonment (Count VII) is dismissed with prejudice because the police officers had probable cause to arrest Higgenbotham.  Further, Plaintiff's claims for assault and battery (Count VI), negligence (Count VIII), and gross negligence (Count XIII) are dismissed with prejudice, consistent with the Court's prior dismissal of Plaintiff's § 1983 excessive force and NJCRA claims.  For purposes of clarity, those common law claims in Counts VI, VIII, and XIII are dismissed as to all Trenton Defendants for the alleged force used before Higgenbotham was arrested and placed in handcuffs; however, those claims against Officer Gonzalez survive based on his conduct after Higgenbotham was handcuffed.  Also, to the extent that Plaintiff's claims for negligence and gross negligence are based on Officer Cavalli's, Officer Ramos', and Sergeant Kmiec's failure to intervene, those claims also survive, consistent with the Court's February 11th

---

[3] Although a survivorship claim and a wrongful death claim are similar, the two types of claims are aimed at receiving different damages. *Smith v. Joseph P. Riley, D.O.*, No. 14-7247, 2016 WL 3398454, at *4 (D.N.J. June 15, 2016). "The Survivor's Act, N.J.S.A. 2A:15-3, permits, for the benefit of the decedent's estate, an appointed representative to file any personal cause of action that decedent could have brought had he lived." *Aronberg v. Tolbert*, 207 N.J. 587, 593 (2011) (citing *Smith v. Whitaker*, 160 N.J. 221, 233 (1999)).  In short, the survivorship action preserves "the right of action which the deceased himself would have had to redress his own injuries." *Aronberg*, 207 N.J. at 593.

Opinion.  Finally, the Trenton Defendants' Motion for Reconsideration is denied as to Plaintiff's claims for wrongful death (Count XIV) and survivorship (Count XV).

**SO ORDERED.**

/s/ Freda L. Wolfson  
Hon. Freda L. Wolfson  
U.S. Chief District Judge